Commonwealth *v.* Berrios, Appellant.

Argued November 12, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David Rudovsky,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Vincent J. Ziccardi,* Acting Defender, for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1970:

Following trial before a judge without a jury in Philadelphia County, Ishmael Berrios was convicted of carrying a concealed deadly weapon in violation of the

Uniform Firearms Act.[1] After post-trial motions were denied, a prison sentence was imposed. On appeal, the Superior Court affirmed the judgment without opinion. We granted allocatur and now reverse.

Berrios and a companion, while walking on a street in Philadelphia, were stopped by two policemen without a warrant and "frisked." A .38 revolver was found concealed in Berrios' belt, and testimony of the policemen concerning Berrios' possession of the gun and the gun itself were introduced as evidence against him at trial, over objection. We conclude that the frisking of Berrios' clothing and the seizure of the gun violated his rights under the Fourth Amendment, and that evidentiary use thereof, was therefore constitutionally impermissible.

A policeman may legally stop a person and question him.[2] But he may not without a warrant restrain that person from walking away and "search" his clothing,[3] unless he has "probable cause" to arrest that person or he observes such unusual and suspicious conduct on the part of the person who is stopped and searched that the policeman may reasonably conclude that criminal activity may be afoot, and that the person with whom he is dealing may be armed and dangerous. *Terry v. Ohio,* infra n. 3; *Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969).

The Commonwealth does not contend that the policemen involved had probable cause to arrest Berrios, but

---

[1] The Act of June 24, 1939, P. L. 872, §628, as amended, 18 P.S. §4628.

[2] Whether the accosted person need answer the questions and if he does whether or not his answers may be used as evidence against him involves legal questions which need not be discussed or answered here.

[3] The "frisking" of Berrios' clothing and person was clearly a search within the purview of the Fourth Amendment: *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968).

urges that the stopping and searching was justified under the second alternative enunciated before. We are not so persuaded.

A search on this ground is justified only when "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger": *Terry v. Ohio,* supra at 27, 88 S. Ct. at 1883. In other words, the sole justification for such a search is the protection of the police officer or others nearby. Moreover, the arresting officer must be able "to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York,* 392 U.S. 40, 64, 88 S. Ct. 1889, 1903 (1968). Good faith on the part of the officer, in itself, is not enough: *Terry v. Ohio,* supra n. 3. The facts disclosed by this record do not meet the foregoing mandated standards.

The pertinent trial evidence was as follows:

At 9:21 a.m. on March 2, 1968, the police officers involved received information over the radio of their police automobile that a shooting had occurred at 2424 North Sydenham Street, Philadelphia; that three males, two Negroes in dark clothing, and one Puerto Rican in light clothing, believed to be involved, were observed leaving the scene and walking east on Ontario Street; that the officers proceeded in their automobile to cruise the area searching for the three men; that about twenty minutes later, they saw a Negro in dark clothing and a Puerto Rican in light clothing walking together in an easterly direction on Ontario Street about three blocks from the scene of the reported shooting; that the officers stopped the men (one of whom was Berrios), "frisked" them, discovered the gun on Berrios' person and seized it.

At the time of the stopping and the search, Berrios and his companion were merely walking on the street and acting in a normal manner. There was nothing

about their persons or in their conduct which would indicate that they were armed or dangerous. The policemen had no reason to connect them with the reported shooting, except that they were walking near the area; that one was a Negro and the other was a Puerto Rican, who wore clothing of the general color reportedly being worn by those involved. The policemen had no information of the physical make-up or characteristics of the men they were seeking, and hence, did not know if Berrios and his companion were of the same description. If the policemen were constitutionally justified in searching Berrios under these circumstances, then every Puerto Rican wearing light clothing and walking with a Negro in this area could likewise be validly searched. This, we cannot accept.

The order of the Superior Court and the judgment of the trial court are reversed, and a new trial is ordered.