**UNITED STATES of America ex rel. Lorenzo RICHARDSON**

v.

**Alfred T. RUNDLE, Superintendent.**

**Civ. A. No. 70–46.**

United States District Court, E. D. Pennsylvania.

April 5, 1971.

Gilbert M. Cantor, Philadelphia, Pa., for relator.

David Richman, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

### OPINION

LUONGO, District Judge.

In 1965, Lorenzo Richardson was convicted in state court on a charge[1] of ag-

---

1. No. 382, Court of Quarter Sessions, March Sessions 1963, County of Philadelphia. He was also convicted on charges of assault and battery, conspiracy and carrying a concealed deadly weapon, Nos. 381, 384 and 385. Sentence was suspended. See Commonwealth v. Duff, 414 Pa. 471, 200 A.2d 773 (1964).

gravated robbery and was sentenced to a term of 7½ to 15 years. In this petition for writ of habeas corpus, he attacks that conviction as based upon the use of evidence obtained in violation of his rights under the Fourth Amendment.

Counsel was appointed to represent Richardson in these proceedings and a hearing was held in this court on February 12, 1971. Relator rested on the state record. The Commonwealth offered the testimony of Captain John Penko, of the Philadelphia Police Department, who was a patrolman at the time of the events in question and a partner of the patrolman (Ralph Meehan), who actually made the arrest and seized the items of evidence under attack here.

From the state record and the testimony in this court, these facts appear:

At approximately 9:45 p. m. on February 18, 1963, Officers John Penko and Ralph Meehan were cruising in a patrol wagon in an easterly direction on Tioga Street in Philadelphia. The officers were enroute to check out a drug store at 15th and Tioga Streets at closing time (10 p. m.). About a half block from their destination, the officers observed four Negro male teenagers running from the steps of the drug store in the direction of the police wagon. All four youths were wearing iridescent raincoats and pork pie hats. The boys ran past the police vehicle, turned south onto Sydenham Street at the next corner and then turned into an alley leading toward 15th Street. The police officers, having been informed by their superiors of a recent outbreak of robberies of drug stores by teenage gangs in this high crime area, became suspicious and gave chase, but by the time they reached the alley, the boys had disappeared. The officers proceeded to the next block (Ontario Street) where they observed a group of Negro youths on the corner of 15th and Ontario Streets wearing the same type clothing as those observed running from the drug store. At the approach of the patrol vehicle, three of the youths ran south on 15th Street. They were pursued by Officer Penko in the patrol wagon. Meanwhile, Officer Meehan, who had alighted from the vehicle, seized the fourth, Richardson, who had started to walk west on Ontario Street. Meehan escorted Richardson up 15th Street toward the patrol wagon. Richardson offered no resistance but he did verbally protest his innocence. When they reached the patrol wagon, Meehan searched Richardson and took from his pants pockets a .22 caliber bullet and a black leather holster. A moment later, a woman who had witnessed the chase, walked up and handed to Officer Meehan a .25 caliber pistol which she stated one of the youths had dropped at the corner of 15th and Ontario.

The pistol fit the holster.[2] Richardson was placed in the patrol wagon and was taken back to the drug store. There the proprietor informed the police that he had just been robbed and assaulted by two Negro male teenagers. The officers stated that they thought they had one of them in the patrol wagon. The proprietor walked out to the vehicle, looked in and identified relator as one of the two youths [3] who had committed the crime. Until the time the police officers spoke with the proprietor, they were unaware that a crime had been committed.

The holster and the bullet were admitted in evidence at relator's trial. From an examination of the trial transcript it appears that the admission of these items in evidence contributed to the finding of guilt.

There has been no attempt in this court to justify the search of relator's person as incidental to a lawful arrest.[4]

2. The ballistics report indicated that the pistol was the one used in the robbery.

3. The proprietor testified that two youths entered his store, neither of whom was

wearing an iridescent raincoat or pork pie hat.

4. Relator initially challenged the search as unlawful because it was not incidental to

This is understandable since the police officers were not aware that a crime had been committed when Richardson was stopped and searched, and had no probable cause for arrest. The Commonwealth does argue, however, that under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), what Officer Meehan did was permissible as part of a limited detention and frisk for investigative purposes. The only issue before me, therefore, is whether the police conduct in the instant case falls within the *Terry* guidelines.

In *Terry*, the Supreme Court stated, at p. 30, 88 S.Ct. at p. 1884, that:

"[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing *may be armed and presently dangerous*, where in the course of investigating this behavior *he identifies himself as a policeman and makes reasonable inquiries*, and *where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled* for the protection of himself and others in the area *to conduct a carefully limited search of the outer clothing* of such persons in an attempt *to discover weapons* which might be used to assault him." (Emphasis supplied)

■ To justify a frisk, at the very least the officer must be able "to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).

■ In the instant case, I am satisfied that the police officers, based upon their knowledge and experience, had reason to conclude that criminal activity might be afoot when they observed the four youths running from the steps of the drug store around closing time. Further investigation was proper under the circumstances. Beyond that, the burden was on the Commonwealth to establish that the police had reason to believe that Richardson, assuming he was one of those youths, was armed and dangerous. The record is barren of any facts from which Officer Meehan[5] could reasonably have inferred that his safety or the safety of others was in danger. He had no idea that a crime, violent or otherwise, had been committed. He made no inquiries of Richardson, and so gave him no opportunity to explain his conduct. Richardson's docility and passivity when he was seized certainly gave Meehan no reason for fear. Meehan's testimony in the state court (he was not produced to testify in these proceedings) did not indicate that he feared for his own safety or for that of others. The fundamental ingredients of the stop and frisk, as spelled out in *Terry*, are missing.

The instant case is similar to Commonwealth v. Berrios, 437 Pa. 338, 263 A.2d 342 (1970). In *Berrios*, the police had been informed that a shooting had occurred, and that three men, two Negroes and a Puerto Rican, had committed the shooting. A general description of the clothing worn by the men was also transmitted over police radio. Approximately three blocks from the scene of the crime, and only about twenty minutes later, two police officers observed a Negro and a Puerto Rican walking down the street, wearing clothing matching the description given over the radio. The officers stopped and frisked the men, and found a revolver on Berrios.

a valid arrest. In his petition under the Pennsylvania Post-Conviction Hearing Act (PCHA), 19 P.S. § 1180–1 et seq., relator alleged that the stop and frisk was illegal, but was denied relief in the state courts because the trial judge in 1965 had found the search valid as incidental to a valid arrest.

5. From Officer (now Captain) Penko's testimony, it appears that he was not present at the time Richardson was stopped and searched. Penko's testimony shed no light on Meehan's state of mind.

He was eventually convicted of carrying a concealed weapon. In reversing the conviction, the Supreme Court of Pennsylvania pointed out that the police had no evidence to connect the two men on the street to the violent crime which they knew had been committed, and that they had no other evidence to indicate that the men were armed and dangerous. The Court concluded, at p. 342, 263 A.2d at p. 344:

> "If the policemen were constitutionally justified in searching Berrios under these circumstances, then every Puerto Rican wearing light clothing and walking with a Negro in this area could likewise be validly searched. This, we cannot accept."

If the police were not justified in searching Berrios when they knew that a violent crime had recently been committed in the immediate vicinity, a fortiori, they were not justified in searching Richardson when they had no knowledge that a crime of any kind had been committed.

The Commonwealth argues that the search can be justified by the arrival of the bystander with the pistol a moment or so after the search was completed. This is no different than attempting to justify an illegal search by what the illegal search discloses. Of course this is not permissible. United States v. DiRe, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Byars v. United States, 273 U. S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927). The Supreme Court has clearly indicated in *Terry* and *Sibron* that to justify a frisk a police officer must be able to point to particular facts from which he could reasonably infer that the person detained is armed and dangerous. This can only mean that the conduct of the police officer must be measured by the facts within his knowledge at the time of the frisk, not by knowledge which he later acquires.

Since items of evidence obtained by an illegal search and seizure were introduced at relator's trial and since it is not clear beyond a reasonable doubt that the error was harmless [cf. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] the conviction is constitutionally infirm and relator is entitled to issuance of the writ. Execution of the writ will be stayed, however, for a reasonable period of time to permit the Commonwealth to appeal the grant of the writ or to retry relator without those items of evidence illegally seized.

Relator has also asserted in this petition that the identification by the proprietor of the drug store at the time of his arrest violated due process. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). There may be some merit to the contention, see Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968), but since this issue has never been presented to the state courts, and since it may be so presented in the event of retrial, it will not be necessary to consider that ground here.

The court expresses its appreciation to Gilbert M. Cantor, Esquire, who, in the highest traditions of the Bar, has conscientiously represented relator in the proceedings before this court without remuneration.