**UNITED STATES of America ex rel. Thomas HOLLMAN**

v.

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Graterford, Pennsylvania.**

**Civ. A. No. 71-284.**

United States District Court,
E. D. Pennsylvania.

July 21, 1971.

---

John O. Cole, Defender Assn. of Philadelphia, Philadelphia, Pa., for petitioner.

Mark Sendrow, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Petitioner seeks a writ of habeas corpus. Convicted on May 8, 1969 of aggravated robbery by Honorable G. Fred DiBona, Judge, Court of Common Pleas, Criminal Division, Philadelphia County, Pennsylvania, on a waiver of a jury trial, he was sentenced to serve a minimum of two and a maximum of ten years in prison. Petitioner filed appeal to the Pennsylvania Superior Court, which in a per curiam opinion, affirmed the conviction. Commonwealth v. Hollman, 216 Pa.Super. 834, 266 A.2d 491 (1970). The Supreme Court of Pennsylvania denied the petition for allowance of an appeal on August 20, 1970, No. 128–A, Misc. Docket 18.

Petitioner contends that his federal constitutional rights, guaranteed by the Fourteenth Amendment, including the Fourth and Sixth Amendments that have been made applicable to state proceedings under the Fourteenth Amendment, were violated. The attack is three-fold. Petitioner alleges that the police, without probable cause, took him into custody, and thereupon photographed him, which photograph constituted an illegal search and seizure, violating the Fourth and Fourteenth Amendments. The photograph so taken was hereafter utilized for a photographic identification by the robbery victim without counsel being present to represent petitioner. Petitioner asserts such identification deprived him of the right to counsel during a critical stage of the proceedings, in violation of the Sixth and Fourteenth Amendments. Finally, the photographic identification was inherently suggestive and it tainted the in-court identification to such an extent as to prevent a fair trial as mandated by the Fourteenth Amendment.

These same basic issues were consistently raised and decided on the merits during the state court pretrial suppression hearing, trial, direct appeal to the Superior Court and in the petition for appeal to the Supreme Court. The Post Conviction Hearing Act of Pennsylvania, Pa.Stat. tit. 19, § 1180 et seq., § 1180–3(d) (Supp.1971), does not permit the relitigation of these identical issues, nor may the same matters again be raised by habeas corpus in the state courts. Commonwealth v. Conard, 212 Pa.Super.

133, 240 A.2d 388 (1968); *citing* Commonwealth v. Allen, 428 Pa. 113, 237 A. 2d 201 (1968). Petitioner has, therefore, exhausted his State remedies and may now seek relief through the federal courts.

A pretrial suppression hearing was held giving a full and fair examination of the questions concerning the arrest and photographic identification. The transcript of this hearing and of the trial have been made a part of this record. The facts are not disputed. The issues were argued by briefs submitted by the District Attorney's Office of Philadelphia County and by petitioner's appointed counsel, the Public Defender Association of Philadelphia. A further evidentiary hearing is unnecessary to determine the present issues. 28 U.S.C.A. § 2254 (1971); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963); United States ex rel. Stukes v. Shovlin, 329 F.Supp. 911 (E. D.Pa.1971).

The relevant facts surrounding the robbery are as follows:—Robert Thomas was robbed at gunpoint in his well lighted grocery store by two men, whom he observed for approximately five minutes during the course of the robbery from as close as a few inches away. Immediately following the robbery he gave a description of the robbers to the police, which description was broadcast over the police radio. The investigating officers and the victim testified at the pretrial suppression hearing and at the trial concerning the descriptions given and broadcast. The description was that the robbers were two Negro males in their early twenties; one was about five feet nine inches tall, weighed one hundred fifty pounds, had black hair which was processed—that is, straightened and combed forward, and wore a dark blue overcoat. The other, subsequently identified as petitioner, was five feet ten inches tall, weighed one hundred fifty pounds, had black hair, and wore a tan camelhair overcoat. (Transcript of Trial, pp. 6, 11, 19 and 30.) The robbery occurred about 7:45 P.M. on De-

cember 11, 1968. At approximately 11:00 P.M. on the following day, a radio police patrol car apprehended two men approximately two blocks from the scene of the robbery who appeared to the police in the patrol car to fit the description that they had heard broadcast over the police radio. The "suspects" were taken by the police to the Central Detective Division. Petitioner was one of the two suspects. He was "warned of his rights" (Transcript of Trial, p. 13) and photographed without objection and without requesting counsel to be present. An attempt to contact the victim at that time was unsuccessful, and consequently no "line-up" identification was conducted while the suspects were then in the police station. After being photographed, petitioner was discharged.

On December 14, 1968, the victim, Mr. Thomas, was located, and shown approximately twelve photographs, one of which was the photograph of Mr. Hollman taken at the police station. All of the photographs were polaroid, and all were similar to the description of petitioner. (Transcript of Trial, p. 17.) The victim made a positive identification of petitioner from among those photographs. Mr. Hollman and the suspect apprehended with him were thereupon formally arrested on warrants and indicted.

At the trial, the victim made a positive in-court identification of petitioner. The victim had ample opportunity to observe the accused; the victim was positive in his identification; the victim's identification testimony was not weakened by any prior failure to identify or prior inconsistent identification; and after cross-examination, the testimony remained positive and unqualified. In federal courts such in-court identification could be treated by the finder of the facts as a statement of fact by the victim. See United States v. Barber, 442 F.2d 517 (3rd Cir. 1971). In addition, at the trial, the pretrial photographic identification testimony, having been ruled admissible at a pretrial sup-

pression hearing, was received in evidence.

Petitioner contends that the pretrial photographic identification was unconstitutionally admitted into evidence at the trial, because it was obtained as the product of an illegal search and seizure. Petitioner further contends that the pretrial photographic identification made without counsel being present to represent petitioner violated his constitutional right to have counsel at all critical stages of the proceedings against him. Finally, petitioner contends that the in-court identification was necessarily tainted by the prior inherently suggestive photographic identification.

■ Fingerprints taken while a suspect is being held in custody without probable cause constitutes "illegally seized evidence" which must be excluded at trial. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). The Fourth Amendment's prohibition of illegal searches and seizures is protected by making inadmissible at trial everything that has the " * * * common characteristic of being something of evidentiary value which the public authorities have caused an arrested person to yield to them during illegal detention. If one such product of illegal detention is proscribed, by the same token all should be proscribed." Id. at 724, 89 S.Ct. at 1396, citing with approval Bynum v. United States, 104 U. S.App.D.C. 368, 262 F.2d 465, 467 (1958). If fingerprints improperly obtained must be excluded so also logically must photographs. The exclusionary rule of the Fourth Amendment is applicable to state court proceedings under the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961). Consequently, photographs taken of a suspect while held in custody without "probable cause" would constitute illegally seized evidence that must be totally excluded in both federal and state court criminal proceedings.

■ Was there probable cause for the original apprehension of petitioner as a suspect? Although one police officer testified that petitioner was not under arrest when he was photographed at the police station, the testimony clearly reveals to the contrary. Petitioner was in actual custody of the police, as a suspect in the robbery, and he was not free to leave until after he was photographed. This detention would constitute an arrest requiring "probable cause" on the part of the arresting officers. Therefore, the Court's duty is to determine if probable cause existed by reviewing the facts and circumstances known to the arresting officers at the time of the arrest, to determine if the facts are sufficient to cause reasonable and prudent men to conclude that the person to be arrested has committed, or is committing, a crime. United States v. 1964 Ford Thunderbird, Webster Bivens, 445 F.2d 1064, p. 1068 (3rd Cir. 1971). "The determination of probable cause deals with probabilities which are 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Id. quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

■ The critical factor on the question of probable cause is the adequacy of the description given by the victim to the police, which was thereafter broadcast on the police radio. The descriptions given have been previously set forth and need not be reiterated. Significantly, the factual accuracy of those descriptions was at no time challenged, except to question whether the coat petitioner was wearing was a "camelhair coat" or simply light in color. The description of the type of hair of the one suspect (black hair—processed—combed forward—straightened), was an unusual and distinctive feature. The descriptions heretofore summarized, which the police had in their possession at the time of placing petitioner in custody and transporting him to the Central Detective Division, adequately justified a rea-

sonable belief by the arresting police that petitioner and the other suspect with him were the two persons who had the previous night committed the robbery at a location approximately two and a half blocks from where they were placed in custody. Therefore, I conclude that the arrest was based on probable cause and was constitutionally valid. The photograph taken of petitioner while held in custody upon probable cause did not constitute an illegal search and seizure.

Petitioner cites Commonwealth v. Berrios, 437 Pa. 338, 263 A.2d 342 (1970) which was cited as controlling in United States ex rel. Richardson v. Rundle, 325 F.Supp. 1262, 1264–1265 (E.D.Pa.1971). In *Berrios*, the Pennsylvania Supreme Court condemned an arrest and search and seizure based upon a generalized description of the defendant. The description in *Berrios* given in connection with a shooting was that of three males, two Negroes in dark clothing, and one Puerto Rican in light clothing, leaving the scene walking east on Ontario Street. About twenty minutes later, police saw a Negro in dark clothing and a Puerto Rican in light clothing walking together in an easterly direction on Ontario Street about three blocks from the shooting. On searching Berrios, the police found a gun for which he was charged with and convicted of carrying a concealed deadly weapon, and carrying a firearm without a license. He was not charged with the shooting. In the present case, the descriptions, in addition to location, number of men involved, color of clothing and race (as in *Berrios*), the police also had a correct description of ages, heights, weights and type of hair (including an unusual, particularized if not unique hair style as to one suspect). Therefore, the *Berrios* case is not apposite to the facts presently under consideration. Noteworthy also, although not controlling, the Pennsylvania Supreme Court denied the petition for appeal by Mr. Hollman from the affirmance of his conviction by the State Superior Court, *after* it had decided *Berrios*, presumedly

determining that the *Berrios* circumstances were not factually applicable as to Hollman.

Petitioner contends that the pretrial photographic identification was impermissibly suggestive and that the failure to have counsel representing him at the identification violated his constitutional rights, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *Wade* holds that a suspect has the right to have counsel present at a pretrial line-up; not to frustrate an identification, but to insure that the line-up is fair and not unduly suggestive.

It is well settled that where convictions are based in part on " * * * a pretrial identification by photograph [they] will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1967); citing as similar Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Each case should be decided on its own facts and the procedure used should be evaluated in the light of the totality of the circumstances. United States v. Conway, 415 F.2d 158, 163 (3rd Cir. 1969); citing *Simmons, supra.*

■ In this case the evidence on the manner in which the photographic identification was conducted, developed both during the pretrial suppression hearing and the trial, supports the conclusion that the identification was conducted in a reliable manner and with the highest regard for fairness. Petitioner's polaroid photograph was among at least eleven additional polaroid photographs shown to the victim four days after the robbery. The investigating police officer testified that all photographs were of men of the same race, and approximately the same ages, weights and heights as petitioner. The victim was given the photographs and simply asked

to look them over to see if he "saw anybody he knew". (Transcript of Trial, p. 9.) While there was testimony that the photographs varied as to the amount of body shown, and as to the size of the photographs (Transcript of Trial, pp. 22 and 23), there was no evidence that the procedures used or the photographs themselves were in any way suggestive. The testimony of the police and the victim was uncontradicted. Thus, there is no basis to find that the police utilized unfairly suggestive identification procedures, and there is no basis to conclude that there was a likelihood of misidentification. The record in this case affirmatively shows to the contrary. See United States v. Hall, 437 F.2d 248 (3rd Cir. 1971).

Petitioner asserts that the pretrial photographic identification was a critical stage in the proceedings against him, and under the rationale of United States v. Wade, *supra,* and its progeny, the presence of counsel representing him was mandatory. In *Wade,* the defendant was identified by witnesses at a pretrial line-up without counsel present and, while the line-up identification was not admitted into evidence at trial, the witnesses did make in-court identifications. The Supreme Court in *Wade* held that:

"[s]ince it appears that there is grave potential for prejudice, intentional or not, in the pretrial line up, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment line up was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] * * * as at the trial itself.' Powell v. Alabama, 287 U.S. 45, at 57 [53 S.Ct. 55, at 60, 77 L.Ed. 158]." *Id.* at 236–237, 87 S.Ct. at 1937.

The Court did not reverse Wade's conviction because the government even under these circumstances should have " * * * the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the line up identification." *Id.* at 240, 87 S.Ct. at 1939.

The Third Circuit in United States v. Zeiler, 427 F.2d 1305 (3rd Cir. 1970), has recently applied the *Wade* rationale to pre-indictment, pretrial photographic identifications. In the *Zeiler* case the Third Circuit held "that the rule of the *Wade* case applies to pretrial photographic identifications of an accused *who is in custody." Id.* at 1307. (Emphasis added.) Thus, the Court would not permit the *Wade* decision to be rendered useless by permitting photograph identifications of defendants without counsel present when the defendants were in custody and available for a line-up. The Court relied on the reasoning in *Wade:*

"In *Wade* the Supreme Court was concerned with the inherent danger of mistake in eyewitness identifications. It recognized suggestive pretrial confrontations conducted by the police to elicit identification evidence as a major cause of mistaken identifications. A witness once induced by such a suggestive confrontation into making a mistaken identification is extremely unlikely later to change his mind. The defendant, unrepresented at this critical pretrial identification proceeding, is severely hampered thereafter in ferreting out the elements of prejudice and reconstructing at trial what actually took place. In order to avert the chance of prejudice and to preserve the defendant's ability effectively to question the reliability of the identification, the court determined that at least at post-indictment line-ups the defendant is entitled to the presence of counsel." *Id.* at 1306–1307.

In a pre-*Zeiler* decision, the Third Circuit had sanctioned the FBI's showing photographs to witnesses of a bank robbery several days after the crime and prior to indictment while the defendants, who did not have appointed counsel at that time, were in custody. United

States v. Conway, 415 F.2d 158, 162 (3rd Cir. 1969). The Court in *Conway*, in contrast to the *Zeiler* decision, did not consider the fact that the defendants were in custody to be controlling. *Id.* While the holding in *Zeiler* is apparently inconsistent with the holding in *Conway*, this may be rationalized by the somewhat differing factual backgrounds of the two cases. However, I will treat the more recent holding of *Zeiler* as controlling on the issue of the applicability of *Wade* to a pretrial photographic identification while the defendant is in custody.

In United States v. Hall, *supra,* decided subsequent to *Zeiler*, the Third Circuit held that a defendant's Sixth Amendment rights were not violated where an FBI agent who identified him at trial made a pretrial photographic identification without counsel being present from a mug book of narcotics law violators, prior to defendant's being taken into custody. The Court held that a line-up would not be required even when available as an alternative to photographic identification.

> "Conceding that this would have been the ideal procedure [i. e. having a line up], we nevertheless think the Supreme Court has already implied that the substitution of lineups for photographic procedures is neither constitutionally required nor mandated under our supervisory power. Simons v. United States * * * 390 U.S. at 385–386 & n. 6 [88 S.Ct. 967, 19 L. Ed.2d 1247]; cf. United States v. Zeiler, 427 F.2d 1305 (3rd Cir. 1970)." *Id.* at 249.

The present question is whether the *Wade* line of cases requires the presence of counsel at a photographic identification process prior to·formal arrest and indictment under the facts of this case. The suspect, Mr. Hollman, was not in custody when the identification was made. The photographs were, however, taken while he was earlier held in custody for the express purpose of having the victim attempt to make a photographic identification at a later date because the victim was not available for a prompt line-up identification while the suspect was in custody. The dangers which were sought to be alleviated in line-ups by the *Wade* decision are obviously present in photographic identifications.

■ Somewhere between mere investigation and actual prosecution, a line must be drawn where police investigations are not deemed critical stages requiring the State to provide legal counsel to be present to represent the suspect. Under the facts of this case, I hold that the pretrial, pre-indictment photographic identification of Mr. Hollman while he was not in custody did not require the presence of counsel representing him at such identification procedure. It also must be considered that to require counsel to be present at *all* pre-indictment photographic identification procedures would be impractical and unmanageable; especially in situations where one is merely a suspect and nothing more, and his whereabouts is totally unknown to the police. How would the police proceed to obtain counsel for such a suspect?

In addition, if there is clear and convincing evidence that an in-court identification has a totally independent source from that of the pretrial identification by line-up or photograph, then irrespective of the validity of the pretrial proceeding, the in-court identification is admissible. *Wade, supra,* 388 U.S. 240, 87 S.Ct. 1926. The trial transcript in this case clearly establishes that the victim's in-court identification was based on his personal observations during the course of the robbery, and not the result of the photographic identification.

■ During the trial Mr. Thomas, the victim, explained the basis for his in-court identification as being his observation of the petitioner for five minutes during the robbery. Mr. Thomas stated that he was behind the counter in his store when petitioner and his co-defendant entered. The two robbers walked up to the counter, one of them

(co-defendant) pulled a gun, the other (petitioner) walked around the counter, passed in front of Mr. Thomas and proceeded to empty the cash register. Neither robber was masked or disguised and they were no more than two to three feet from Mr. Thomas during the robbery. Petitioner, in fact, was at one time only a few inches from Mr. Thomas when he was emptying the cash register. Cross-examination on this point brought out that Mr. Thomas's view of the petitioner was unobstructed and that the store was well lighted. Even if the pre-indictment photographic identification was in some way suggestive or counsel should have been present, it is impossible to conclude on the basis of the record that the photographic identification tainted or in any way destroyed the independent source of the in-court identification.

Even assuming arguendo that the pre-trial photographic identification was in some way suggestive to the petitioner or that this identification was made at a critical stage in the proceedings, such that this evidence should have been excluded at the trial, the admission of the photographic identification into evidence at the trial was "harmless beyond a reasonable doubt." Gilbert v. California, 388 U.S. 263, 274, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The trial judge of this non-jury trial, in his memorandum opinion denying the petitioner's motion for a new trial pointed out: "At trial, the victim testified that he could have identified the defendant had he never been presented with the photographs and that his identification at trial was not, in any degree, effected by the photograph identification." Commonwealth of Pennsylvania v. Thomas Hollman, January Session, 1969, Nos. 431 and 432. The trial judge's opinion and the entire record shows clearly that the judge based his finding of guilt in this case on the unswerving in-court identification. The photographic identification admitted into evidence would,

therefore, have been harmless beyond a reasonable doubt under any consideration of the case.

The petition for a writ of habeas corpus will be denied, but certification of probable cause for appeal will be made, as there are substantial constitutional questions involved that are not free from doubt.