359 A.2d 456

COMMONWEALTH of Pennsylvania

v.

Glenwood YOUNGBLOOD, Appellant.

Superior Court of Pennsylvania.
Argued April 19, 1976.
Decided June 28, 1976.

**74**

John J. Dean, John R. Cook, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Louis R. Paulick, Thomas M. Lilly, Asst. Dist. Attys., Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that he was arrested without probable cause and that a subsequent on-the-scene identification should have been suppressed as the fruit of the illegal arrest.

At about 6:40 p. m., on January 21, 1975, Officers Tomasko and Hajduk of the Pittsburgh Police Department received a radio call that a purse snatching had just taken place on Second Avenue, near Tripton Street, in the Hazelwood section of Pittsburgh. The only description given in the radio call was that the suspect was a black youth, about fourteen-years-old, wearing a short, blue-denim jacket. At the subsequent suppression hearing, the officers testified that, immediately prior

to the radio call, they had passed two men who appeared to be "eyeballing a store which . . . they were possibly going to hold up." When they heard the description of the purse-snatch suspect, the officers believed that one of the two men whom they had just seen fit the broadcast description. After circling the block, the officers stopped the two men, one of whom was not detained. Appellant was arrested and taken to the scene of the purse-snatch, two blocks away. The victim of the purse-snatch identified appellant while he was still in the police vehicle.

Appellant was subsequently indicted at No. 0969A March Sessions, 1975, on a charge of robbery.[1] On May 7, 1975, appellant made an oral motion to suppress the identification evidence as the product of an illegal arrest. Although the motion was not timely made, see Pa.R.Crim.P. 323(b), the district attorney waived objections and the court heard the motion. The motion was denied. Immediately thereafter, appellant waived his right to a jury and proceeded to trial before the suppression court. The court found appellant guilty of robbery. Post-trial motions were subsequently filed and denied; on July 9, 1975, the court sentenced appellant to a term of imprisonment of five to ten years. This appeal followed.

Appellant raises only one issue: whether "the identification of appellant by the victim of a purse snatching was unconstitutional and should have been suppressed because the identification was made after appellant was arrested without probable cause."

The test to be applied to determine whether probable cause exists has been stated frequently: "The crucial test is whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been

---

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 4; 18 Pa.C.S. § 3701.

committed and that the individual arrested was the probable perpetrator." *Commonwealth v. Jones*, 457 Pa. 423, 428, 322 A.2d 119, 123 (1974). See also, *Commonwealth v. Sams*, 465 Pa. 323, 350 A.2d 788 (1976); *Commonwealth v. Pegram*, 450 Pa. 590, 301 A.2d 695 (1973); *Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1970); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969). Obviously, the instant case does not involve an issue of whether a crime had been committed. The issue is whether the officers were justified in the belief that appellant committed the crime. *Commonwealth v. Sams*, supra.

Probable cause does not lend itself to bright line distinctions and must be analyzed on a case by case basis. In support of a finding of probable cause, appellant was picked up in the immediate vicinity of the crime, shortly after the crime took place and was wearing a blue-denim jacket. On the other hand, appellant was twenty-five-years-old and bearded. The victim and the police testified that the victim originally described her assailant as fourteen-years-old and mentioned nothing about facial hair. She also testified that her assailant had run from the scene of the crime. Appellant was observed by the officers moments after the crime or at about the same time that the crime took place; the police testified that he was "eyeballing" a store. He was apparently not agitated as one might expect if he had just run from the scene of the crime; rather, according to the police, he was calmly deciding whether to hold up a shopkeeper. That is, his behavior *may* have aroused the officer's suspicion that criminal activity was afoot,—cf. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967)—but did not indicate that he had just committed a robbery or purse-snatching.

The facts of the instant case are similar to those in *Commonwealth v. Sams*, supra: a Philadelphia police officer responded to a radio message that a gang killing

had just occurred; while proceeding to the area, he received a second call that "Negro males were involved in the crime and that they were running south on Eleventh Street. As the officer proceeded to the scene, he saw appellant running south on Juniper Street, which was one and one-half blocks from the scene of the killing. The officer, having no description other than a 'Negro male', stopped appellant and asked him his name and age." 465 Pa. at 325, 350 A.2d at 789. At that point, the appellant was arrested; he eventually confessed. The Supreme Court reversed and held that the officer lacked sufficient facts to amount to probable cause despite the fact that the officer was in the immediate vicinity of the crime, and knew that young black males were fleeing the scene.[2]

The Commonwealth's reliance on *Commonwealth v. Jones*, supra, and *Commonwealth v. Tookes*, 236 Pa. Super. 386, 344 A.2d 576 (1975), is unfounded. In *Jones*, the arresting officer made the stop of the appellant "based on the fact that [he] knew that four or five Negro males, between seventeen and twenty-one, in dark clothing, had fled in an easterly direction from a robbery scene. The arresting officer in *Jones* observed a person fitting the above description walking very fast in the area of the crime and breathing heavily, perspiring and frequently looking over his shoulder. . . . In *Jones*,

2. See also, *Commonwealth v. Berrios*, supra. In *Berrios*, the police had information that a shooting had taken place and that two black men dressed in dark clothing and a Puerto Rican in light clothing were seen leaving the scene. Twenty minutes later, police stopped a black man dressed in dark clothing and a Puerto Rican dressed in light clothing, three blocks from the shooting. The Supreme Court reversed Berrios' conviction because "[t]he policemen had no information of the physical make-up or characteristics of the men they were seeking, and hence, did not know if Berrios and his companion were of the same description. If the policemen were constitutionally justified in searching Berrios under these circumstances, then every Puerto Rican wearing light clothing and walking with a Negro in this area could likewise be validly searched. This, we cannot accept." *Berrios*, supra, at 342, 263 A.2d at 344.

we found probable cause, based on the fact that appellant therein fitted the description of the persons seen leaving the crime scene and that Jones had been chased from the scene and was observed by the arresting officer as being out of breath and perspiring." *Commonwealth v. Sams*, supra, at 327, 350 A.2d at 789–90. Similarly, in *Commonwealth v. Tookes*, supra, the arresting officer responded to a radio call of a burglary in progress. The call included the following description of the suspect: "Negro male wearing a red knit hat and brown leather coat, carrying a large object. . . . Appellant, a Negro male, was wearing a red knit hat and a brown coat, was carrying a large (22½″ by 8½″ by 9″) radio . . ., and was walking in a direction away from the scene of the burglary." 236 Pa.Super. at 387, 344 A.2d at 577.

Based on the foregoing cases, we have no difficulty finding that the arresting officers in the instant case lacked probable cause: a twenty-five-year-old bearded male calmly "eyeballing" a store does not sufficiently resemble a fourteen-year-old youth running from the scene of a robbery to establish probable cause for an arrest.[3]

In deciding the instant case, we must distinguish two problems that are analytically similar. The instant case involves a fourth amendment violation, and, therefore, requires application of the exclusionary rule. Evidence is excluded under that rule not because it is unreliable, but because it is the product of conduct that is to be deterred. See *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). The instant case

---

**3.** The Commonwealth does not attempt to argue that even if the officers lacked probable cause, they were entitled to conduct a stop and frisk. Indeed, a stop and frisk would have yielded no evidence upon which to detain appellant. He was not armed and none of the proceeds of the purse-snatching were found on his person. Further, it is not clear whether the police even had sufficient basis for a limited "Terry" stop. See *Commonwealth v. Sams*, supra; *Commonwealth v. Pegram*, supra.

does not involve a legal arrest and a subsequent illegal "show-up" or lineup. A lineup triggers different constitutional rights than does an illegal arrest—the sixth amendment right to counsel at a critical stage, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and fifth amendment due process rights if the identification is unduly suggestive. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Stovall v. Denno,* 388 U.S. 293, 872 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976). Fairness of the lineup procedure goes to the reliability of the evidence: "It is the likelihood of misidentification which violates a defendant's right to due process, . . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* makes clear, the admission of evidence of a showup without more does not violate due process." *Neil v. Biggers,* supra, 409 U.S. at 198, 93 S.Ct. at 381. Even if evidence garnered as a result of suggestive identification is introduced into evidence, a court must nonetheless determine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199, 93 S.Ct. at 382. See also, *Commonwealth v. Goldwire,* 230 Pa.Super. 106, 326 A.2d 546 (1974). In the instant case, the exclusionary rule precludes such inquiry as soon as we find that the on-the-scene identification was the product of the illegal arrest.

█ In the instant case, the lower court denied appellant's motion to suppress and allowed testimony concerning the on-the-scene identification into evidence. That evidence was clearly the product of the police illegality, *Commonwealth v. Cephas,* 447 Pa. 500, 291 A.2d 106

(1972); therefore, it must be suppressed. *Davis v. Mississippi,* supra; *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). On retrial before the victim's in-court identification can be admitted, the lower court must conduct a taint hearing to determine whether that identification had an independent basis. *Wong Sun,* supra; *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972);[4] see also, Belsky, *Criminal Procedure in Pennsylvania: The Pretrial Issues in Four Parts,* Part III, 78 Dick.L.Rev. 209, 262 (1973).

Appellant's conviction is reversed and the case remanded for a new trial.

PRICE and VAN der VOORT, JJ., dissent.

---

4. *Commonwealth v. Garvin,* supra, established the right of the Commonwealth to retry an accused who was illegally arrested and subsequently identified, even though the original identification may have been a fruit of the police illegality. At that retrial, the Commonwealth is permitted to use identification with a basis independent of the identification resulting immediately from the arrest.