J-S45014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TERRY LIGHTY, | |
| Appellant | No. 297 MDA 2015 |

Appeal from the PCRA Order February 5, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000893-2011

BEFORE: BOWES, WECHT, AND FITZGERALD * JJ.

MEMORANDUM BY BOWES, J: **FILED SEPTEMBER 02, 2015**

Terry Lighty appeals the order entered on February 5, 2015, wherein the trial court denied his petition for post-conviction relief. We affirm.

Appellant was charged and convicted of one count of burglary of an occupied structure and one count of theft by unlawful taking. These charges stemmed from Appellant's unauthorized entry into an occupied residence at 136 North Mary Street in Lancaster, Pennsylvania on January 18, 2011. The victim testified that she awoke to find Appellant in her house and that he told her that he was going to take her television. Appellant also warned the victim not to call the police because he had "friends downstairs" and he knew where she lived.

---

\* Former Justice specially assigned to the Superior Court.

The victim's neighbor, Brian Manning, noticed Appellant leaving the residence carrying some of the victim's property. Mr. Manning called 911 immediately after witnessing this and provided the police with a detailed description of Appellant's clothing and physical characteristics. A fresh snow was falling on the night of the burglary. Sergeant Philip Berkheiser tracked a single set of boot prints leading away from the crime scene down Mill Avenue, until they reached 500 West Orange Street, where he noticed other sets of footprints in the snow. N.T., 11/08/11, at 156-160. While tracking these prints, Sergeant Berkheiser located an abandoned box which contained an air purifier and palm sander owned by the victim.

After Mr. Manning provided him with the suspect's description as a "black male . . . wearing a gray hoody, gray pants, a blue vest, and gloves," Officer Ben Bradley sent out a police radio call to all officers at 1:00 a.m. N.T., 11/07/11, at 95. Sergeant William Hickey received this call and, just before 2:00 a.m., he observed a black male, who matched Mr. Manning's description, walking through the parking lot where his patrol vehicle was parked and heading toward the convenience store across the street. *Id*. at 99. Officer Chris Genetti arrived to back up Sergeant Hickey and the two approached Appellant and identified themselves. *Id*. at 101-102. Sergeant Hickey explained to Appellant that a burglary had just occurred at a nearby house and that he matched the suspect's description. *Id*. He then asked

- 2 -

Appellant if would step outside the store so that he could ask him some questions about the incident. *Id*.

During this period of questioning, Sergeant Hickey learned Appellant's identity and that he claimed to be staying at 602 West King Street, Apartment 5, with a person named "B" or "Bob." *Id*. at 101, 104. Appellant was patted-down for weapons, and police officers took photographs of his clothing and boots. *Id*. at 106-108. Sergeant Hickey contacted the officers who had been at the crime scene and asked if they could bring anyone who could identify the suspect to the convenience store. *Id*. at 102. Mr. Manning was brought to the store and was allowed to view Appellant from inside a police vehicle. *Id*. He identified Appellant's clothing as matching that of the suspect but was not able to conclusively state that Appellant was the person who he observed at the crime scene. *Id*. at 103.

Appellant's photograph was later included in a photo array shown to Willy Robertson, who occupied an apartment in the same building in which Appellant claimed that he was staying. Mr. Robertson identified Appellant as the person who had brought him a television the same night of the burglary. *Id*. at 111. This television was recovered from Mr. Robertson's apartment by police and was identified as the same one stolen from the victim. *Id*. at 108.

Appellant's trial counsel failed to file a suppression motion seeking to preclude the introduction of evidence obtained during Appellant's *Terry*[1] stop outside the convenience store. Consequently, Appellant's statements, items seized, and the photographs taken from this encounter with the police were later offered into evidence at trial.

A jury convicted Appellant of burglary of an occupied structure and theft by unlawful taking. The trial court imposed the mandatory minimum sentence of twenty-five to fifty years imprisonment pursuant to 42 Pa.C.S. § 9714(a)(2) because Appellant had a prior record that included at least two crimes of violence. We affirmed the judgment of sentence on August 14, 2012, and our Supreme Court denied allowance of appeal on April 16, 2013. *Commonwealth v. Lighty*, 60 A.3d 570 (Pa.Super. 2012) (unpublished memorandum), *appeal denied*, 64 A.3d 631 (Pa. 2013).

On December 24, 2013, Appellant filed a timely *pro se* PCRA petition. Appointed counsel filed an amended PCRA petition that alleged Appellant's trial counsel provided ineffective assistance for failing to file an omnibus pretrial motion seeking to suppress the evidence derived from his detention outside of the convenience store and the search of his person. Appellant requested that the PCRA court vacate his sentence and remand the matter for a new trial without the allegedly tainted evidence.

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

An evidentiary hearing was held on Appellant's PCRA petition on April 16, 2014. Appellant's trial counsel was the only witness and testified as to why he had not filed a suppression motion. He explained:

[The police] asked him to come outside; he voluntarily went with them. They returned all his personal belongings to him. There was no statement made by him at the time and he, again, basically volunteered to when they asked him to go with them, or at least outside with them.

PCRA Hearing, 05/16/14, at 9. Counsel further elucidated that he received the police report prior to trial and reviewed the report's account of the interaction to determine whether a suppression motion was warranted. *Id.* at 10-12. He continued that it was his typical trial strategy in criminal cases to identify suppression issues, and when he discovered a potentially meritorious challenge, he pursued it. *Id*. at 11-12. He estimated that he files suppression motions in approximately thirty-five percent of the cases that he tries, but he did not believe that the facts and circumstances of this encounter between Appellant and the police would be subject to suppression. *Id* at 11-14. Specifically, he agreed, "that it was a lawful investigative detention supported by reasonable suspicion[.]" *Id*. at 13.

The PCRA court denied relief on February 5, 2015, on the grounds that Appellant, "failed to demonstrate by a preponderance of the evidence that [counsel's failure to file a] motion to suppress rises to the level of a claim of arguable merit," because trial counsel's testimony indicated that he had done the necessary investigation of Appellant's interaction with the police

before determining that there were no meritorious suppression issues. PCRA Court Opinion, 02/15/15, at 6, 10. Appellant filed a timely notice of appeal.

Appellant presents a single issue for our review:

Whether the Court erred in denying post-conviction relief where trial counsel was ineffective in failing to seek suppression of the fruits of an illegal search, when the police did not have sufficient cause to detain and interrogate Appellant, or to search him for incriminating evidence?

Appellant's brief at 4.

In order to prevail on his ineffective assistance of counsel claim, Appellant must show that his trial counsel provided ineffective assistance. We have previously held that:

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Halley***, 870 A.2d 795, 799 n. 2 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Carr***, 768 A.2d 1164, 1166 (Pa.Super. 2001).

***Commonwealth v. Turetsky***, 925 A.2d 876, 879 (Pa.Super. 2007).

For Appellant to prevail on a PCRA claim for ineffectiveness of counsel, Appellant must establish by a preponderance of the evidence: (1) that the underlying claim has merit; (2) that there was no reasonable basis for counsel's conduct or lack thereof; and (3) that Appellant suffered prejudice as a result of counsel's conduct or lack thereof. ***Commonwealth v. Laird***, __ A.3d __, 2015 WL 4401561 at *3 (Pa. 2015). We are also reminded that

counsel is presumed effective, and the burden of establishing counsel's ineffectiveness always lies with Appellant. *Commonwealth v. Balodis*, 747 A.2d 341, 334 (Pa. 2000).

In *Commonwealth v. Reed*, 19 A.3d 1163, 1166 (Pa.Super. 2011), this Court highlighted the differences between the three levels of police interaction with a person. We also held that each level requires a different amount of justification. *Id*. The three levels of interaction between police and citizens under search and seizure laws are the "mere encounter," "investigative detention," and "custodial detention." *Id*.

> The first level of interaction is the 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005) (citation omitted).

The determination of whether or not a person can be considered to have been "seized" by police requires the court to consider whether the citizen's movement was restrained in some way by means of physical force or a show of authority. *Commonwealth v. Strickler*, 757 A.2d 884, 887 (Pa. 2000). Instantly, there is nothing in the record which suggests that Appellant's movement was restrained at the outset of questioning. Appellant

voluntarily agreed to go outside after Sergeant Hickey and Officer Genetti approached him, identified themselves, indicated that they were investigating a burglary in the area, and asked if he would step outside with them for questioning. N.T., 11/07/11, at 101-102. At this point, the interaction between Appellant and police witnesses remained a mere encounter and he was under no compulsion to comply with the officers' request to step outside or provide them with any information.

The Commonwealth mistakenly claims that Appellant provides no factual or evidentiary basis from which we can assume that this mere encounter became an investigatory detention. However, once the officers began to conduct a pat-down search for weapons and use a camera to take photographs of Appellant's appearance and attire, we find that, "the encounter escalated into an investigatory detention." ***Commonwealth v. Guess***, 53 A.3d 895, 901 (Pa.Super. 2012).

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

***Commonwealth v. McClease***, 750 A.2d 320, 324-325 (Pa.Super. 2000) (citation omitted)

An investigatory detention requires a reasonable belief by the officers that criminal activity was afoot. In ***Commonwealth v. Tam Thanh***

*Nguyen*, ___A.3d ___, 2015 WL 1883050 (Pa.Super. 2015), we recently reiterated,

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

*Id*. at *5 (citation omitted). We continued, "this Court must make an objective inquiry, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id*. (citation omitted).

Appellant relies on *Commonwealth v. Hicks*, 253 A.2d 276 (Pa. 1969), in support of his claims that his investigatory detention by the officers lacked the requisite reasonable suspicion. Forty-five minutes after a reported attempted burglary, the defendant therein was detained and subjected to a pat-down search as he was walking on the sidewalk four blocks from where the crime occurred. The victims, who reported the burglary via a 911 call, described the suspect as a thirty-year-old black male with a mustache, wearing a brown coat. The defendant lacked a mustache, but was black, in his thirties, and wearing a "beige or light colored jacket." *Id*. at 278. The police officers continued to hold the defendant following the pat-down to enable the victims to arrive and positively identify the suspect. Our Supreme Court ultimately found that the mere fact that the defendant

was black and in his thirties was not enough to establish reasonable suspicion that he committed the crimes.

Appellant also relies upon **Commonwealth v. Berrios**, 263 A.2d 342 (Pa. 1970), where the Pennsylvania Supreme Court invalidated an investigative detention of two men based on their respective races. The police officers in **Berrios** had received information about a shooting and received a generalized description that the suspects were two black males in dark clothing and one Hispanic male in light clothing. **Id**. at 344. The officers proceeded to patrol the nearby area searching for the suspects, and twenty minutes later, observed a black man and a Hispanic man walking together three blocks from the crime scene. **Id**. The men were stopped by the officers and subjected to an investigatory detention. **Id**. The Court found that the description of the defendants' races and general color of their clothing was insufficient to raise a reasonable suspicion to justify their detention. **Id**.

Instantly, Appellant asserts that the rulings in **Hicks** and **Berrios** conclusively illustrate that there were insufficient facts for Sergeant Hickey to form a reasonable suspicion that Appellant was involved in the Mary Street burglary just because he was black and wore clothing that was similar to the witness's description. Appellant mischaracterizes the difference in the level of specificity between the descriptions given of the suspects in **Berrios** and **Hicks**, and the suspect's description in the present case. In contrast to

the generalized descriptions of the respective suspects in those two cases, the eyewitness's description of the suspect in the instant case matched the color and type of almost every piece of clothing that Appellant was wearing.

Appellant was observed by Sergeant Hickey entering a convenience store only four blocks from the crime scene an hour after the burglary had occurred. N.T., 11/07/11, at 99. Sergeant Hickey also noticed Appellant was wearing gray sweatpants, a gray hooded sweatshirt, a dark vest, and tan boots, which identically matched the description of the burglary suspect provided by the eyewitness. *Id*. Sergeant Hickey testified that, prior to Appellant's appearance at the convenience store, he had not seen any other individuals dressed in any type of clothing that even remotely matched this description. *Id*. at 100. Due to these circumstances, we concur with the trial court's opinion that, from the beginning of Appellant's interaction with police, Sergeant Hickey's suspicions were much more reasonable than those of the officers in *Hicks* and *Berrios*. Moreover, Appellant was not immediately detained based on Sergeant Hickey's observations of his clothing, as was the defendant in *Hicks*. In fact, Appellant acquiesced to the officers' request to go outside the store and answer some questions about the burglary. *Id*. at 102.

This Court has previously found that the combination of a defendant matching the physical description of a suspect, coupled with the fact that no other individuals in the area fit the description, and nervous or anxious

behavior during questioning in the mere encounter stage of police interaction are all relevant factors in an officer's reasonable suspicion determination. *Guess*, *supra*. We find that it is entirely reasonable for trial counsel to conclude that Appellant's behavior prior to the pat-down search, in combination with the fact that his attire directly matched the description of the suspect given by Mr. Manning, enhanced Sergeant Hickey's suspicions and justified his investigatory detention.

Upon careful review of the evidence, we concur with the PCRA court's finding that Appellant has failed to demonstrate that trial counsel provided ineffective assistance by not raising a motion to suppress the evidence presented by the Commonwealth at trial. As a result, Appellant has failed to prove one of the three required elements of the established test for a PCRA claim regarding ineffective assistance of counsel. Since counsel cannot be considered ineffective for failing to raise a claim that is without merit, *Douglas*, *supra*, Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/2/2015

- 12 -