J-S04038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     :         PENNSYLVANIA
                                       :
             v.                           :
                                       :
LEONARD BURNETT                 :
                                       :
         Appellant            :    No. 179 EDA 2016

Appeal from the PCRA Order December 14, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015406-2008

BEFORE: SHOGAN, J., OTT, J. and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED FEBRUARY 21, 2017**

Appellant, Leonard Burnett, appeals from the December 14, 2015, order entered in the Court of Common Pleas of Philadelphia County denying his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without an evidentiary hearing. After a careful review, we affirm.

The relevant facts underlying this matter have been cogently set forth by the lower court in connection with Appellant's direct appeal as follows:

> On October 22, 2008[,] at approximately 4:45 p.m., the victim[,] Sean Mohon[,] was walking south on South 48th Street in Philadelphia. Mr. Mohon passed by Appellant and his co-defendant[,] Gregory Stephens, who were walking together

---

[*] Former Justice specially assigned to the Superior Court.

slowly in the same direction as Mr. Mohon. Appellant then approached Mr. Mohon from behind, put his arm around Mr. Mohon's neck, and put something hard against Mr. Mohon's back. Mr. Stephens was standing to the left of Mr. Mohon, within his peripheral vision. Appellant said he had a gun and instructed Mr. Mohon to give him his wallet. Mr. Mohon attempted to give just the cash from his wallet, at which point Mr. Stephens told him, "hurry up mother f[ ]er" and punched him in the jaw. Appellant then took Mr. Mohon's wallet.

Appellant and Mr. Stephens then faced Mr. Mohon and demanded his debit card PIN number, threatening "to hurt [his] family" if he did not give it to them. Mr. Mohon provided a false PIN. At this time[,] it was still daylight and Mr. Mohon was able to observe the faces of Appellant and his co-defendant from a distance of about three feet away.

After getting the false PIN, Appellant and Mr. Stephens ran from the scene. Mr. Mohon called 911, and the dispatcher relayed Mr. Mohon's descriptions of the perpetrators over police radio. Mr. Mohon described the perpetrators to the dispatcher as wearing khaki pants and gray [shirts or] hoodies. Police Officers Gregory Tertulien and Adrian Hustler responded to the "flash" descriptions, independently spotted Appellant and Mr. Stephens on South 51st Street, and together stopped both suspects.

About ten minutes after Mr. M[o]hon called 911, police officers arrived at his location and then brought Mr. Mohon to view Appellant and Mr. Stephens. An officer told Mr. Mohon that they "have guys that match the description." The officers did not tell Mr. Mohon that they had the persons who robbed him, nor did they tell Mr. Mohon what to say. Appellant and Mr. Stephens were wearing khaki pants and [gray/dark] shirts when the officers showed them to Mr. Mohon...[who] immediately and unequivocally identified Appellant and Mr. Stephens as the individuals who had robbed him minutes earlier. Officer Tertulien recovered four dollars from Appellant. Officer Hustler recovered a five-dollar bill from Mr. Stephens.

Trial Court's Opinion, filed 12/6/11, at 2-3 (citations to record omitted).

Following his arrest, Appellant, who was represented by Andrew J. Heller, Esquire, proceeded to a jury trial, along with Mr. Stephens as his co-

defendant. At trial, Mr. Mohon again identified Appellant and Mr. Stephens as the men who robbed him. At the conclusion of trial, the jury convicted Appellant of robbery, 18 Pa.C.S.A. § 3701(a)(1)(ii), and criminal conspiracy, 18 Pa.C.S.A. § 903, and pursuant to 42 Pa.C.S.A. § 9714(a)(1),[1] the trial court sentenced Appellant to a mandatory minimum term of ten to twenty years in prison on each charge, with the sentences to run concurrently.[2]

Appellant filed a timely post-sentence motion, which was denied. Thereafter, Appellant did not file a timely direct appeal; however, after his appeal rights were reinstated *nunc pro tunc* via a timely-filed PCRA petition, he filed an appeal to this Court with the assistance of new counsel, Emily Cherniack, Esquire.

On direct appeal, Appellant contended (1) the trial court erred in denying his motion to dismiss pursuant to Pa.R.Crim.P. 600; (2) the

_____

[1] Section 9714(a)(1) provides, in pertinent part:
> Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S.A. § 9714(a)(1).

[2] Mr. Stephens was also convicted of robbery and conspiracy. Pursuant to Section 9714(a)(1), the trial court sentenced him to ten to twenty years in prison for each offense with the sentences to run concurrently. A panel of this Court affirmed Mr. Stephens' judgment of sentence on direct appeal. *See Commonwealth v. Stephens*, 462 EDA 2011 (Pa.Super. filed 3/22/12) (unpublished memorandum).

evidence was insufficient as a matter of law where the identification by Mr. Mohon was suggestive and not reliable; and (3) the verdict was against the weight of the evidence where the identification by Mr. Mohon was suggestive and not reliable. Finding no merit to Appellant's contentions, and relying substantially upon the well-reasoned opinion of the trial court, this Court rejected Appellant's claims. *See Commonwealth v. Burnett*, 2653 EDA 2011 (Pa.Super. filed 8/20/12) (unpublished memorandum). Appellant filed a petition for allowance of appeal, which our Supreme Court denied on March 13, 2013.

On or about April 8, 2013, Appellant filed a timely *pro se* PCRA petition, and on December 19, 2013, Peter Alan Levin, Esquire, was appointed to represent Appellant. On January 9, 2015, Attorney Levin filed on behalf of Appellant an amended PCRA petition and supporting memorandum of law.[3] On April 24, 2015, the Commonwealth filed a responsive motion to dismiss the PCRA petition, and on October 26, 2015, the PCRA court convened a hearing to permit counsel to present oral argument as to whether an evidentiary hearing should be held as to Appellant's amended PCRA petition. *See* PCRA Court's Opinion, filed 4/14/16, at 4. Thereafter, by order entered on December 14, 2015, the

_____

[3] The record does not reveal the reasons for the two-year delay in counsel's filing of the amended petition.

PCRA court denied Appellant's PCRA petition without an evidentiary hearing. This timely, counseled appeal followed. The PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, counsel timely complied on behalf of Appellant, and the PCRA court filed a comprehensive Pa.R.A.P. 1925(a) opinion.

Our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa.Super. 2011) (citation omitted). This Court "will not disturb findings that are supported by the record." **Id.** (citation omitted).

Moreover, as it relates to claims of effective assistance of trial counsel, we note that when analyzing ineffectiveness claims, we begin with the presumption that counsel was effective. **Commonwealth v. Spotz**, 610 Pa. 17, 18 A.3d 244 (2011). "[T]he [petitioner] bears the burden of proving ineffectiveness." **Commonwealth v. Ligons**, 601 Pa. 103, 124, 971 A.2d 1125, 1137 (2009) (citation omitted). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." **Id.** (citation omitted). Regarding

prejudice, it must be demonstrated that "but for the act or omission in question, the outcome of the proceedings would have been different." *Commonwealth v. Rollins*, 558 Pa. 532, 542-43, 738 A.2d 435, 441 (1999) (quotation marks and quotation omitted). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs. *See id.*

Moreover, we need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. *Commonwealth v. Johnson*, --- Pa. ---, 139 A.3d 1257 (2016). Finally, we emphasize that counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Jones*, 590 Pa. 202, 912 A.2d 268, 278 (2006).

At the outset, we direct Appellant's attention to the Pennsylvania Rules of Appellate Procedure which limit a principal brief to 14,000 words, unless the brief does not exceed 30 pages. Pa.R.A.P. 2135(a)(1). Where the brief exceeds 30 pages, a certificate of compliance with the 14,000 word-count limit must be filed. *Id.* Here, Appellant's brief spans 72 pages, exclusive of attachments, and fails to include a certificate of compliance. Rule 2101 underscores the seriousness with which the appellate courts take deviations from procedural rules, as it permits us to quash or dismiss an appeal for procedural noncompliance. *See* Pa.R.A.P. 2101. Although we will address

Appellant's issues, we admonish counsel for his failure to follow the rules set forth by our Supreme Court.

In his first issue,[4] Appellant contends trial counsel was ineffective in failing to secure an expert witness to testify or author a report regarding the reliability of eyewitness identification. Appellant asserts that "[t]he overwhelming body of scientific research has established beyond any doubt that eyewitness testimony has the potential to be dangerously unreliable[;]" "eyewitness misidentification remains the leading cause of false convictions in the United States[;]" "[t]he unreliability of eyewitness testimony is now widely recognized in the psychology literature and by law enforcement[;]" and "expert testimony relevant to witness misidentification has general acceptance in the relevant scientific community and the courts." Appellant's Brief at 25-26, 31 (internal quotations marks and citations omitted). Appellant indicates that these precepts are particularly of concern where, as here, the victim and perpetrators are strangers to each other, as well as the fact the victim is Caucasian and the perpetrators are African-American. *See id.* at 29. Accordingly, he argues trial counsel was ineffective in failing to present at trial the testimony or report of an expert witness to explain and educate the jury about the limitations of eyewitness identifications. *See id.* at 27. We conclude Appellant is not entitled to relief.

_____

[4] We have renumbered Appellant's issues for the ease of discussion.

Historically, Pennsylvania maintained a strict bar against the admission of expert testimony relating to eyewitness identification, holding that such testimony would intrude upon the jury's basic function of making credibility determinations. *See, e.g., Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176 (1993). The Pennsylvania Supreme Court recently overturned this *per se* exclusionary rule in *Commonwealth v. Walker*, 625 Pa. 450, 92 A.3d 766 (2014). Therein, our Supreme Court reversed course, holding that "the admission of expert testimony regarding eyewitness identification is no longer *per se* impermissible in our Commonwealth[.]" *Id.* at 495, 92 A.3d at 792-93. Rather, "trial courts must [now] exercise their traditional role in determining the admissibility of [such] expert testimony, including pursuant to Rules 401, 403, and 702 of the Pennsylvania Rules of Evidence." *Commonwealth v. Selensky*, 117 A.3d 1283, 1285 (Pa.Super. 2015) (citing *Walker*, *supra*).

However, at the time of Appellant's trial, which took place in 2010, the *per se* ban against expert testimony and evidence relating to eyewitness identification remained in place. Therefore, there was no duty on trial counsel to call an expert witness or present a report from such an expert witness at Appellant's trial. Further, while the Pennsylvania law in this area has changed dramatically since Appellant's trial in 2010, we will not deem

trial counsel ineffective for failing to predict a change in the law.[5] **See Commonwealth v. Gribble**, 580 Pa. 647, 863 A.2d 455 (2004) (indicating counsel cannot be ineffective for failing to predict changes in the law). Accordingly, we find Appellant is not entitled to relief on this claim.

In his next issue, Appellant contends trial counsel was ineffective for failing to object to the imposition of a mandatory minimum sentence under 42 Pa.C.S.A. § 9714(d). Specifically, he avers trial counsel should have objected to the imposition of such a sentence in light of the fact that neither Appellant's counsel nor the trial court was provided with a written copy of Appellant's criminal record prior to the trial court imposing its sentence.

As Appellant correctly asserts, 42 Pa.C.S.A. § 9714(d) provides that "[t]he applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender." 42 Pa.C.S.A. § 9714(d). However, Appellant is mistaken in his assertion that neither the trial court nor his counsel were provided with his written criminal record prior to the imposition of sentence.

For instance, during Appellant's sentencing hearing, the trial court stated that it "ordered a presentence investigation and a prior record history

_____

[5] Additionally, we note that **Walker** has not been held to apply retroactively.

of [Appellant] which [the court] received and reviewed[.]" N.T., 2/1/11, at 3. Additionally, as the PCRA court indicated, the record reveals the sentencing court "clearly possessed detailed information regarding Appellant's criminal record, and was able to use that knowledge to appropriately, and lawfully, craft his sentence." PCRA Court's Opinion, filed 4/14/16, at 7 (citation and footnote omitted). *See Commonwealth v. Maleno*, 502 A.2d 617 (Pa.Super. 1985) (indicating that information contained in a presentence investigation report concerning prior convictions is presumed to be valid). Moreover, at the sentencing hearing, trial counsel confirmed that he had received Appellant's prior criminal record history. N.T., 2/1/11, at 3. Accordingly, there is no arguable merit to Appellant's underlying claim, and trial counsel may not be deemed ineffective on this basis. *See Jones*, *supra*.

In his next issue, Appellant contends trial counsel was ineffective in failing to inform Appellant prior to sentencing that he faced a mandatory minimum of ten to twenty years in prison. Assuming, *arguendo*, there is arguable merit to Appellant's claim, Appellant has failed to show he was prejudiced by trial counsel's omission.

In the case *sub judice*, immediately following the jury's return of the verdict and in open court, the Commonwealth provided notice that this was Appellant's "second strike" since he had a previous F-1 robbery conviction in Philadelphia. N.T., 11/10/10, at 9-10. Accordingly, the Commonwealth

indicated that Appellant was subject to a ten to twenty year mandatory minimum sentence. *See id.* at 9. Inasmuch as Appellant was made aware by the Commonwealth that he faced the imposition of a mandatory minimum sentence, Appellant was not prejudiced by any omission by trial counsel in this regard. *See Rollins*, *supra* (defining prejudice for purposes of ineffective assistance of counsel claims).

In his next issue, Appellant claims trial counsel was ineffective in failing to object to Appellant's absence or request an on-the-record colloquy of Appellant's waiver of his right to be present when the trial court reinstructed the jury on the definition of "beyond a reasonable doubt" within the deliberations room and outside of the presence of Appellant. We find no relief is due.

It is axiomatic that a defendant has a constitutional right to be present during every stage of his criminal trial. *Commonwealth v. Rompilla*, 554 Pa. 378, 721 A.2d 786 (1998); Pa. Const. art. I, § 9. This right is codified in Pennsylvania Rule of Criminal Procedure 602(A).[6] However, even where the

_____

[6] At the time of Appellant's trial, Pa.R.Crim.P. 602(A) provided the following:
> (A) The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict and the imposition of sentence.

*(Footnote Continued Next Page)*

trial court violates the right, the appellant it not entitled to relief unless he demonstrates actual prejudice resulting therefrom. *See Commonwealth v. Ressler*, 798 A.2d 221 (Pa.Super. 2002).

In the present case, trial counsel waived Appellant's right to be present during the reinstruction of the jury as to the definition of "beyond a reasonable doubt." *See* N.T., 11/9/10, at 171, 176-77. However, assuming, *arguendo*, this was done without Appellant's consent, Appellant has failed to demonstrate that he was prejudiced. There is no doubt that trial counsel was present when the trial court reinstructed the jury. *Id.* at 178-80. Moreover, the trial court's initial and subsequent instructions regarding reasonable doubt were substantially similar. *Id.* at 149-51 (initial instruction on reasonable doubt); 178-80 (second instruction on reasonable doubt). After the initial charge was given to the jury with Appellant present, trial counsel did not lodge any objection, and Appellant does not aver on appeal that either the first or second charge, themselves, were erroneous. Accordingly, Appellant has failed to establish that he was prejudiced by his absence from the second charging of the jury, *see Ressler*, *supra*, and thus, trial counsel may not be deemed ineffective on this ground.

*(Footnote Continued)* ─────────────

Pa.R.Crim.P. 602(A). This Rule was amended in 2013 to clarify that, upon a finding that the absence was without cause, the trial judge may conduct the trial in the defendant's absence when the defendant fails to appear without cause at the time set for trial or during trial.

In his next issue, Appellant argues trial counsel was ineffective in failing to file a pre-trial motion seeking to suppress Mr. Mohon's identifications since Appellant was arrested without probable cause prior to Mr. Mohon's initial identification of him.[7] Appellant contends that Mr. Mohon's out-of-court and in-court identifications should have been suppressed as fruits of this unlawful seizure, and trial counsel was ineffective in failing to file a motion to suppress on this basis. We agree with the PCRA court that there is no arguable merit to Appellant's underlying contention, and therefore, trial counsel cannot be ineffective.

There are three types of encounters between law enforcement officials and private citizens: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005). We have stated:

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction

---

[7] The certified docket entries reveal that, on February 13, 2009, trial counsel filed an omnibus pre-trial motion; however, the motion is not included in the certified record, and thus, we are unable to determine what issues trial counsel presented therein.

has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

To determine if an interaction rises to the level of an investigative detention,...the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders.

*Id.* (quotation marks and quotations omitted).

The numerous factors used to determine whether a detention has evolved into an arrest include the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police.

***Commonwealth v. Clinton***, 905 A.2d 1026, 1032 (Pa.Super. 2006)

(citation omitted).

In the case *sub judice*, in analyzing Appellant's claim, the PCRA court

reasoned as follows:

Contrary to Appellant's assertion, he was not identified by [Mr.] Mohon after he was arrested; [but] rather, the [initial] identification occurred while Philadelphia Police Department [ ] officers were subjecting Appellant [and his cohort] to an investigative stop. *See* N.T., 11/9/10, at 98. [For instance, two officers, one of whom was driving an unmarked pickup truck, stopped their vehicles and approached the two men on a public street. *See id.* at 79, 98. The officers told the men to stop and patted them down for weapons. *See id.* at 82. Officer Tertulien testified he approached the men with his weapon drawn; however, to the best of his recollection, he did not handcuff the men at this point. *See id.* at 82, 90-91. Within minutes, Mr. Mohon was transported to the scene, where he identified the men. *See id.* at 98.] Such a stop is constitutionally valid, as

- 14 -

long as the detaining officer has a reasonable suspicion that the subject of the stop was involved in criminal activity, a belief which must be backed by "specific, articulable facts and reasonable inferences drawn from those facts in the light of the officer's experience."

Here. Mr. Mohon immediately called 911 and described the assailants as two African-American males wearing khaki pants and dark-colored or gray tops. *See* [*id.* at 80, 94, 102.] This "flash" information[,] [which also included the direction in which the suspects ran after the robbery,] was immediately broadcasted over police radio. [*See id.* at 98.] Within minutes and a short distance from the crime scene (approximately .4 miles away), the detaining officers observed Appellant and his cohort [walking in the direction of and] wearing clothing that matched the "flash" information. *See id.* at 86-89, 100. [At this point, the officers approached the two men, and stopped them for an investigation. *See id.* at 98. Meanwhile, another vehicle brought Mr. Mohon to the area, where he positively identified Appellant and his cohort. *See id.* The arresting officer testified that, at this point, Appellant "was placed in custody." *Id.*] In light of the totality of the circumstances, the officers had a reasonable suspicion that justified the investigative stop of Appellant [and his cohort.]

PCRA Court's Opinion, filed 4/14/16, at 10 (emphasis, quotation, and footnote omitted).

We agree with the PCRA court's sound reasoning, and additionally note that the two cases upon which Appellant relies, ***Commonwealth v. Berrios***, 437 Pa. 338, 263 A.2d 342 (1970), and ***Commonwealth v. Youngblood***, 359 A.2d 456 (Pa.Super. 1976) (*en banc*), are distinguishable from the present case and/or are not supportive of Appellant's argument that he was subjected to a custodial detention at the time Mr. Mohon initially identified him as a suspect to police. *See* Appellant's Brief at 42.

For example, in **Berrios**, a police officer received "flash" information that a shooting had occurred, and the suspects were described as two African-American males in dark clothing and one Puerto Rican man in light clothing. **Id.** at 341, 263 A.2d at 344. Twenty minutes later, the police officer saw one African-American man and one Puerto Rican man, who was wearing light clothing, walking down the street. **Id.** at 342, 263 A.2d at 344. The officer stopped and frisked the two men.

Based on these facts, our Supreme Court concluded that the two men had been subjected to an investigative detention (and not an arrest as indicated by Appellant herein), but that the officer did not have reasonable suspicion to support the investigative detention. **See Berrios**, **supra**. Presently, Appellant makes no assertion and develops no argument indicating that the police did not have reasonable suspicion to conduct an investigative detention; but rather, he focuses his argument on an arrest without probable cause theory.

Moreover, in **Youngblood**, a police officer received a radio call that a purse snatching had just occurred and the suspect was "a black youth, about fourteen-years-old, wearing a short, blue-denim jacket." **Id.** at 457. The officer then passed two men who appeared to be "eyeballing a store," and when the officer heard the description of the purse snatcher, he circled the

block and arrested the defendant/appellee, who did not meet the description of the purse snatcher.[8]

In finding there was no probable cause to arrest the defendant/appellee in **Youngblood**, this Court noted that the description of the defendant/appellee was not similar to the description of the purse snatching suspect. Specifically, we held that "we have no difficulty finding that the arresting officers in the instant case lacked probable cause: a twenty-five-year-old bearded male calmly 'eyeballing' a store does not sufficiently resemble a fourteen-year-old youth running from the scene of a robbery to establish probable cause of an arrest." **Id.** at 459 (footnote omitted).

However, in the present case, Appellant and his cohort, who were stopped by police .4 miles from the scene within minutes of the crime based on "flash" information (including race, gender, and a description of clothing), were not subjected to an arrest prior to Mr. Mohon's identification, and thus, unlike in **Youngblood**, probable cause was not necessary at this juncture. Accordingly, for all of the aforementioned reasons, we conclude trial counsel was not ineffective in failing to file a pre-trial motion to suppress on the

---

[8] In **Youngblood**, the Commonwealth/appellant did not contest that an arrest occurred and the focus of the opinion is on whether there was probable cause to support the arrest.

basis Appellant was subjected to an improper arrest without probable cause prior to Mr. Mohon's identification of him as as suspect.[9]

Appellant's next two issues are intertwined. Appellant claims trial counsel was ineffective in failing to file an interlocutory appeal with regard to the trial court's ruling that Appellant's speedy trial rights were not violated under Pa.R.Crim.P. 600. Appellant contends that an interlocutory appeal would have had merit since the Commonwealth did not exercise due diligence in bringing him to trial in the time specified by Rule 600. He further claims that trial counsel was ineffective in failing to file a motion for dismissal under Rule 600 on the basis that the Commonwealth made no pre-trial motions seeking an extension of time based on judicial delay. Thus, he avers that the Commonwealth did not exercise due diligence in bringing Appellant to trial in violation of Rule 600, and trial counsel was ineffective in this regard. We find no relief is due.

_____

[9] In a one paragraph argument, Appellant additionally avers trial counsel was ineffective in failing to file a pre-trial motion seeking to exclude Mr. Mohon's pre-trial identification on the basis it was "suggestive and not reliable[.]" Appellant's Brief at 49. Appellant has not sufficiently developed this claim so as to permit meaningful review. *See* Pa.R.A.P. 2119. In any event, we note that, on direct appeal, Appellant averred the evidence was insufficient to sustain his convictions and/or the jury's verdict was against the weight of the evidence due to Mr. Mohon's suggestive and unreliable identification. As indicated *supra*, we found no merit to these claims, and to the extent Appellant attempts to re-litigate or rephrase the issues instantly, his attempt fails. **See Commonwealth v. Bond**, 572 Pa. 588, 819 A.2d 33 (2002).

Initially, we note that Appellant is mistaken in his assertion that trial counsel did not file a motion seeking to dismiss under Rule 600. The record reveals that the trial court denied such a motion prior to the jury trial. **See** N.T., 11/9/10, at 4-14. Moreover, to the extent Appellant contends trial counsel should have filed an interlocutory appeal from the trial court's ruling, we note that Appellant has demonstrated no prejudice since, on direct appeal, this Court analyzed and considered the merits of trial counsel's motion to dismiss under Rule 600. Ultimately, we agreed with the trial court that Appellant's speedy trial rights were not violated under Rule 600.

As the PCRA court cogently acknowledged in its opinion, Appellant's underlying claim that his speedy trial rights were violated under Rule 600 has been "previously litigated" for purposes of the PCRA. **See** PCRA Court's Opinion, filed 4/14/16, at 12 (citing 42 Pa.C.S.A. § 9544(a)).[10] Accordingly, Appellant's attempts to obtain review of the issue by setting forth new theories of relief, and attempting to resurrect the claim by alleging the ineffective assistance of trial counsel, is unavailing. **See Bond**, **supra**.

In his next issue, Appellant avers trial counsel was ineffective in failing to prepare his case properly for trial. In particular, he avers trial counsel

---

[10] The PCRA provides, in relevant part, that "[f]or purposes of this subchapter, an issue has been previously litigated if:...(2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S.A. § 9544(a).

"failed to investigate his case[,]" "never discussed a trial strategy until the day of trial[,]" and failed to "prepare a motion on the Rule 600 violation[.]"[11] Appellant's Brief at 64.

Initially, as discussed *supra*, Appellant is mistaken in his assertion that trial counsel did not file a motion to dismiss under Pa.R.Crim.P. 600. In fact, trial counsel filed and litigated such a motion; however, the trial court denied the motion. **See** N.T., 11/9/10, at 4-14. Furthermore, as to Appellant's assertions that trial counsel failed to prepare properly, failed to investigate the case, and never discussed a trial strategy with him until the day of trial, the PCRA court properly concluded the following:

> Appellant neglected to develop any of these arguments with any degree of specificity, vaguely alluding to actions taken (or not taken) by trial counsel, and then [baldly] claiming that he was somehow prejudiced thereby. [I]t is well-settled that an "undeveloped claim of ineffectiveness is insufficient to prove an entitlement to relief[.]"

PCRA Court's Opinion, filed 4/14/16, at 13 (quotation and citation omitted).

We agree with the PCRA court's reasoning and find Appellant is not entitled to relief. **See Commonwealth v. Jones**, 571 Pa. 112, 127, 811 A.2d 994, 1003 (2002) ("Claims of ineffective assistance of counsel are not

---

[11] In this portion of the argument section of his brief, Appellant also suggests trial counsel was ineffective since Appellant "asked counsel to interview and present his wife as a witness and counsel refused." Appellant's Brief at 64. In subsequent portions of his brief, Appellant has more fully developed this issue. **See** Appellant's Brief 66-67. Accordingly, we shall address this as a separate issue *infra*.

self-proving; [an] undeveloped claim of ineffectiveness is insufficient to prove an entitlement to relief."); ***Commonwealth v. Bracey***, 568 Pa. 264, 795 A.2d 935 (2001) (holding bald assertions of ineffectiveness do not entitle a petitioner to relief).

In his next issue, Appellant contends that trial counsel was ineffective for failing to call his wife, Tracee Burnett, on his behalf as a witness at trial.

> When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements...by establishing that:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.
>
> ***Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586, 599 (2007). To demonstrate [ ] prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Gibson***, 597 Pa. 402, 951 A.2d 1110, 1134 (2008); ***see also Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501, 546 (2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense.").

***Commonwealth v. Johnson***, 600 Pa. 329, 351-52, 966 A.2d 523, 536 (2009).

Assuming, *arguendo*, Appellant demonstrated his wife existed, was available and willing to testify for the defense, and trial counsel knew or should have known of her existence, Appellant has failed to explain how the

absence of his wife's testimony "was so prejudicial as to have denied [Appellant] a fair trial." *Id.* at 351, 966 A.2d at 536 (quotation omitted).

In his appellate brief, Appellant avers his wife would have offered "beneficial," "crucial" testimony as to "certain issues" of "relevance" for the defense; however, he does not specify precisely what his wife's testimony would consist of, how it would be beneficial to his defense, or to which issues her testimony would pertain. *See* Appellant's Brief at 66-67. Such bald assertions are not sufficient to demonstrate prejudice. *See* ***Commonwealth v. Gonzalez***, 608 A.2d 528, 532 (Pa.Super. 1992) (indicating counsel will not be deemed ineffective in failing to call a particular witness absent a showing that the witness' testimony would have been beneficial and helpful to the defense).

In any event, to the extent Appellant cites to his wife's sworn, notarized affidavit in support of his claim, *see* Appellant's Brief at 66, we note the PCRA court indicated the following:

> According to a notarized affidavit signed by Tracee Burnett, Appellant's wife, she and her husband told trial counsel that she could testify to the fact that Appellant "is left-handed and that he didn't own or wear hoodies," but that trial counsel declined, telling them "that wouldn't be enough." [*See* Appellant's Memorandum in Support of his Amended PCRA Petition, filed 1/9/15, Exhibit B.] Such testimony would not have provided an effective counter to Mr. Mohon's repeated, consistent, and assured statements that he recognized Appellant as having been one of his assailants.

PCRA Court's Opinion, filed 4/14/16, at 13-14 (citation omitted).

We agree with the PCRA court's well-reasoned analysis in this regard. *See Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa.Super. 2008) (where the witness was not present during the shooting, and could not testify regarding the encounter, the witness' testimony would not have been beneficial to the defense, thus trial counsel was not ineffective in failing to call the witness).

In his next issue, Appellant contends trial counsel was ineffective in failing to inform Appellant that the Commonwealth had offered Appellant a plea of four to eight years in prison. We find no relief is due.

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). In *Commonwealth v. Chazin*, 873 A.2d 732 (Pa.Super. 2005), this Court addressed the issue of ineffectiveness of counsel with regard to counsel's duty to inform a defendant of the risk and benefits of a plea offer. This Court noted that in order for a defendant to be entitled to relief, he has the burden of proving that: (1) an offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the offer; and (4) he was prejudiced thereby. *Id.* at 735.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea

offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Frye*, 132 S.Ct. at 1409.

Here, assuming, *arguendo*, Appellant demonstrated trial counsel failed to convey a plea offer to him, we agree with the PCRA court that Appellant is not entitled to relief since he has failed to meet his burden of showing he was prejudiced. **See Frye**, **supra**.

For instance, at the sentencing hearing, the Commonwealth specifically stated on the record that "Your Honor...the defendant was given the opportunity to plead to the F-2 robbery, four to eight years incarceration, and rejected that offer." N.T., 1/2/11, at 8. Appellant made no objection or statement with regard to the revelation there had been a plea offered to him; however, he continued to argue that he did not commit the crimes and pointed to deficiencies in Mr. Mohon's identification of him. **Id.** at 9. Therefore, despite allegedly being informed for the first time the Commonwealth had previously made a plea offer, Appellant did not seek to address the issue; but rather, he continued to maintain his innocence during the sentencing hearing. The PCRA court judge, who was also the sentencing judge in this case, indicated she took Appellant's lack of surprise and lack of

objection into consideration, thus concluding that Appellant's present bald, self-serving assertion, *i.e.,* that he would have taken a plea deal, was not credible. We find no error in this regard. **See Spotz**, **supra** (indicating credibility determinations are within the province of the PCRA court and are binding upon the appellate court when supported by the record).

Furthermore, aside from noting that a petitioner must demonstrate the "court would have accepted its terms" in order to establish prejudice, **see** Appellant's Brief at 68, Appellant has failed to argue, let alone establish, a reasonable probability that the trial court would have accepted the plea bargain in this case. Accordingly, Appellant has failed to demonstrate the necessary prejudice, and no relief is due. **See Frye**, **supra** (holding petitioners must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel); **Chazin**, 873 A.2d at 737 (holding "prejudice, *i.e.*, the reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different," cannot be established absent evidence that the trial court would have accepted the plea offer) (quotation marks and quotation omitted)).

In his next issue, Appellant contends trial counsel was ineffective in failing to object to the trial court's imposition of an illegal mandatory minimum sentence. More specifically, Appellant contends that trial counsel should have objected since, under the dictates of **Alleyne v. United States**,

133 S.Ct. 2151 (2013), the facts necessary for the imposition of the mandatory minimum were not established by a jury beyond a reasonable doubt. Appellant's Brief at 68.

We dispose of this issue simply by concluding that, under **Alleyne** and its progeny, Appellant's sentence is not illegal. Appellant received a mandatory minimum sentence because he previously had been convicted of robbery. The courts of this Commonwealth and the United States Supreme Court have taken the position that **Alleyne** does not require that a prior conviction be proven before a jury in order to support a mandatory minimum sentence. **Alleyne**, 133 S.Ct. at 2161–63 (holding that any fact other than a prior conviction that triggers a mandatory minimum sentence must be found by a jury beyond a reasonable doubt); **Commonwealth v. Reid**, 117 A.3d 777 (Pa.Super. 2015) (recognizing **Alleyne's** narrow exception to the general rule for the fact of a prior conviction). Thus, trial counsel cannot be ineffective on this basis. **See Commonwealth v. Jones**, 590 Pa. 202, 912 A.2d 268 (2006) (holding counsel cannot be ineffective for failing to raise a meritless claim).

In his next issue, Appellant avers generally that direct appeal counsel was ineffective for failing to raise each of the above issues on appeal. Appellant's boilerplate allegation and bald assertion do not satisfy his burden. **See Commonwealth v. Paddy**, 609 Pa. 272, 15 A.3d 431 (2011). In any event, inasmuch we have found Appellant is not entitled to relief with

regard to any of the previous claims, direct appeal counsel may not be found ineffective on this basis. ***Commonwealth v. Walker***, 613 Pa. 601, 36 A.3d 1 (2011).

In his final issue, Appellant argues the PCRA court erred in denying his petition without an evidentiary hearing. A PCRA petitioner is not automatically entitled to an evidentiary hearing. ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa.Super. 2012). We review the PCRA court's decision to deny a petition without an evidentiary hearing, or with a limited hearing, for an abuse of discretion. ***See Commonwealth v. Reid***, 627 Pa. 151, 99 A.3d 470 (2014). In light of the fact Appellant's claims are patently frivolous, as discussed *supra*, we conclude the PCRA court did not err in denying relief without an evidentiary hearing.

For all of the foregoing reasons, we affirm the PCRA court's denial of Appellant's first PCRA petition.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/21/2017</u>